The next case on the calendar is Bensch v. Estate of Umar. Good afternoon, Your Honors. For the appellant, James E. Mercanti, may it please the court, from the firm of Ruben Fiorello, Friedman & Mercanti. Good afternoon. Good afternoon. You can go ahead. Your Honors, I'm privileged to have the opportunity to address an important issue of admiralty law. And as a maritime lawyer of 33 years, I'm honored that the court took this issue for our argument. It's important because the first issue here, Your Honors, involves a matter of particular interest to the Admiralty Bar, which, as Your Honors know, as you've been involved in many maritime cases, the mission is uniformity of the maritime laws throughout the nation. For example, the pleading requirements of a vessel owner's action for exoneration from or limitation of liability, not only under the 1851 Act, but the Supplemental Admiralty Rule F-2 and the case law. And a second issue, more specific to this case, Your Honors, is whether the two amendments that were offered by the appellant here, the petitioner or vessel owner, would be futile, as the district court suggested, or would they be proper limitation complaints. Just very briefly, I'll summarize the facts of this case. It involves two vessels and a jet ski rental facility called Waikiki Watercraft. The owner of the vessel was transiting the Niagara River on a nice summer day. His name is Christopher Bench. The appellee is named Umar. He was on a rented jet ski from Waikiki Watercraft with his daughter on board the jet ski, and he jumped the wake of another vessel, and unfortunately, he fell right into the path of the petitioner appellant's vessel, suffering a fatal injury. The affidavits, Your Honors, which are in the record taken by police on the same day of the accident, it's in the appendix 62, 64, and 96, are compelling and disturbing about how Mr. Umar was speeding across the navigation channel, jumping the wake. Excuse me, Mr. McEntee, I read all those affidavits, but they're not part of the complaint, right? No, they're not, Your Honor. Based on the complaint, it seems to me there, and correct me if I'm wrong, you're arguing two things. First, you're arguing that the original complaint was sufficient, and then you are arguing that if it was not, you should be allowed to amend your complaint because the amendments would make it a valid complaint and would therefore not be futile. Is that right? Precisely. So, if we can briefly talk about that first issue. Are you suggesting that the Supreme Court's Twombly and Iqbal decisions do not apply in admiralty? I'm suggesting that the preferred rule, Your Honor, is Judge Learned Hand Rule, in the case of, and cited in the brief, Continental Sand. Colonial Sand. Colonial Sand, I'm sorry. Those cases you just mentioned, Your Honor, are not admiralty cases. Yes, but Colonial Sand was decided at a time when there were separate admiralty rules, not just supplemental rules to the Federal Rules of Civil Procedure, but completely separate rules, right? That's right, and the rules back then, Judge, you're exactly right, was more stringent rules. The rule back then you're referring to is Rule 51 of the admiralty rules, and that required all facts and circumstances upon which the owner is relying upon to limit liability. Right, and Judge Hand said that the rules, the admiralty rules, should not be more hyper-technical than the Federal Rules. Colonial Sand sort of merged the standard in admiralty with the standard in the Federal Civil Rules, which at that time was very lenient notice pleading. Right, Judge Hand said, Your Honor, 151 F. 2nd. 884. He observed that the limitation pleading is no different from any other libel. Common custom in the admiralty not to confine pleadings to the ultimate constitutive or operational facts of which the right or defense depends, as is required in other branches of law, you know, such as… But doesn't it make a difference that that decision addressed the pleading requirements before the Federal Rules of Civil Procedure subsumed admiralty and before Twombly and Iqbal? Yeah, thank you, Judge. The Federal Rules and the admiralty rules emerged in 1966. Yes, Judge Learned Hand's decision was in 1945, but since then it's been adopted by many courts and it still remains good law, including it's cited with approval in this circuit, the Western District of New York, the Eastern District of New York, the Fifth Circuit, the Ninth Circuit, and the District of Utah, all relying on that, you know, scholarly wording of Judge Hand as to what a vessel owner is required to plead in a general notice pleading to allow a limitation action to proceed. And even more importantly, may I quickly point out, that if the vessel owner was required to plead with such specificity, the facts that bear on limitation of liability, that would shift the burden of proof to the vessel owner to establish in a pleading that he has no privity of knowledge. That is not the law. The law in this circuit, in Messina, Judge Learned, in your case, that there's a two-step process. It's a two-step process that the initial burden of proof is on the claimant to establish... But it's not about the burden of proof. It's about what has to be pledged. And what has to be pledged is a lack of knowledge and privity. And if Twombly governs, and it's not clear to me at all why it wouldn't, it's an interpretation of Rule 8 and nothing in the supplemental admiralty rules says Rule 8 doesn't apply. It just says you have to say the facts, not just the legal conclusion. And you did that, it seems to me, in the proposed amended complaint. You've got lots of facts that give a reason to think that there wouldn't be privity in knowledge. You're correct. We certainly did. Certainly the Amendment No. 2, Judge Lynch's, contains so many facts that you'd think it was an interrogatory response or a pretrial finding of fact in a bench trial. And that has apparently escaped the FOE, who only said that we allege one additional fact in our second amended complaint, which is completely wrong. If you look at A98, we allege an extraordinary amount of additional facts. But I believe that the initial complaint at A8, I think the district court overlooked Paragraph 3, where we stated a lot of facts about what was in these affidavits, about the operating at a high rate of speed across the channel without regard to navigation rules. No, that says what the other fellow was doing, what the deceased was doing. And it amply establishes, or at least it amply pleads, if you believe those allegations, you would conclude that he was negligent, but that doesn't say anything about whether your client was also negligent. Well, that's where I think the district court went wrong, Judge, is that I don't have to plead where my client wasn't negligent. I have to plead that, for example, this allegation in Paragraph 3 of A8 establishes what we believe to be a sole cause, sole fault on the plaintiff. Just like in the case of Vianneke, which I was on, myself as well, the guest neglected the order of the captain of the boat not to jump overboard. He jumped overboard and he died. That's all he pled, and it was a sole fault issue. And look, also, Judges, the limitation action is also an action for exoneration from all limitation of liability, not just limitation of liability. And that's what makes it a two-step process in the Second Circuit, that by just establishing what we've pled in the initial complaint, if Paragraph 3 of the initial complaint on page A8 is established, we'll be exonerated. We'll never get to limitation of liability. So I think that the request for such specificity is not required in the rule. How would you be exonerated if the deceased was negligent, but your client had the last clear chance to avoid the accident and was inattentive and traveling at an excessive rate of speed, for example? Well, I think all courts would say, Judge, there, you're absolutely right, that that requires discovery and not to be dismissed at a pleading stage under Rule 12b-6. And no court has dismissed a limitation action under Rule 12b-6 in a published decision that hasn't allowed an amendment. Again, we're talking about two separate things here, and I want to be clear about that. It's a separate question whether either of your amended complaints were sufficient, but the larger question of law here, as to whether there is a separate rule in Admiralty that permits a fairly conclusory pleading of lack of servity and knowledge, that's a fairly substantial question. And the other side quotes, cites two cases that you filed where exactly this happened, that is to say, the courts decided that the initial complaint was insufficient and then gave you leave to amend. Correct. And the Wright and Miller Treatise suggests that on the analysis that Rule 8 governs unless the supplemental rules say otherwise, says the Twombly does apply to Admiralty cases. So it seems to me there's a fair amount of authority heading in that direction, and we've got a serious question to deal with before we get to the question, if we do, as to whether the amended complaint was sufficient. Well, Judge, then we can just look at Rule F2 itself. The text of the rule requires the owner, to set forth the facts on the basis of which the right to limit liability is asserted. It doesn't say every fact. It doesn't say all facts. And the very next line of the rule, which is very important to look at, Rule F2, when they want to say all facts, they say all facts. Because the very next line says, and all facts necessary to enable a court to determine the amount of which the owner's liability should be limited. And we did that at A11. We put in a 13-page marine survey report about the amount in value and a survey of the owner's vessel. So the rule itself, if you look at the rule very carefully, Your Honor, when they want to say all facts, it says all facts in the very next line. And here's another very important issue, and then I'll yield my time. The district court said at A81 and 82 that the requirement of Rule F2 was expanded well beyond its intent. This was in the first report recommendation, where in that decision, the text of F2 was expanded with a simple definition of what is meant by privy of knowledge set forth by Messina, Judge Livingston's case, where the court, a very interesting quote to read, the court engrafted Messina's definition of privy of knowledge into Rule F2. And if you look at that page A81 and 82, you'll see what the court did there by engrafting a much more complex standard when Messina had nothing to do with the pleading. Messina was an appeal of a trial. Messina was an appeal of a trial and nothing to do with pleading, yet that's what the court relied upon in engrafting a definition on F2 that's not in the text of the rule. Thank you. We'll hear from your adversary. Thank you, Judge. If it pleases the court, Robert Moranto from Andrews, Bernstein, Moranto, and Decotra. Addressing right now the initial complaint, as was just discussed, it's pretty clear from our papers and from the decision of the lower court and quite honestly, the Vojtovich decision previously made by the Western District that the complaint has to have specificity. And I would like to point to F2. And when my colleague was, an opponent, was referencing the actual rule, the rule does say that the complaint shall set forth the facts on the basis of which the right to limit liability is asserted. The initial complaint in this case asserts no facts, zero. In terms of the allegation that is required by the U.S. Code with respect to 46 U.S. Code 30505 regarding privity or knowledge, I would suggest if we adopt the arguments of the appellant in this case, that in a scenario where a drunk driver of a boat who is speeding, who hits a fishing boat that is anchored in broad daylight, if all they would have to do is say that I didn't have privity or knowledge and that would be sufficient. And that's not sufficient according to the rules. And the fact of the matter is Trombley does apply to the instant facts scenario. There is a requirement, and I will point out, counsel was well aware that the Western District of New York had mandated that there be specificity in the complaint. He was on those cases. The Vojtovich case, which was in the Western District of New York, also confirms that issue. So with respect to the initial complaint, I believe that it's very clear based on Trombley, based on Vojtovich, and based on the reasoning that's asserted and was asserted by Your Honor in this case with respect to well-known treatises and the fact that F-2 is clearly, it has clear language in it that dictates what must be done in these complaints. Mr. Moranto. Yeah. Mr. Moranto, this is Judge Kovanec. I'm mindful of your arguments on the first complaint, but why don't we turn to the second amended complaint? It strikes me that that's the most relevant of the complaints. In the second amended complaint, Mr. Bench did add other factual allegations to support his conclusion that he was not at fault. Isn't that right? He certainly did place more facts into evidence, which suggests that he's not at fault. But I would suggest, Your Honor, if I may, that the fact, well, I mean, completely at fault. The facts that were presented in that, and we're talking about the second amended complaint, correct? Correct. Okay. The facts that were presented in that case still do not, according to the lower court, and according to our papers, still do not rise to the level of providing any evidence that Mr. Bench was a non-negligent party. And why is that so? That is, why does it not plausibly state a claim for exoneration? Because a plausibly stated claim for exoneration, Your Honor, must not only, as the papers state, provide evidence that Mr. Bench, or I'm sorry, that Mr. Umar was at fault in a comparative negligence situation, it must provide evidence that the driver, Mr. Bench, was a non-negligent party. Because this court has held that if there is some negligence on behalf of, and again, we're in a feeding situation here as opposed to having a concursus or a decision being made on the liability action. So they must not only, in that complaint, make allegations or have sufficient allegations of lack of liability or culpability, complete culpability on their part. And a conclusory, Your Honor, even that second complaint, the third complaint I got, I'm sorry, even the third complaint, it simply says that Mr. Bench took evasive action. Well, but that's, those are conclusions. He took, that he took sufficient action to avoid this accident. Well, that presupposes and actually indicates that he saw the incident before it happened. It raises issues. Well, of course it raises issues, but you're saying that to say he took evasive action is not sufficient. You have to say what evasive action he took. Well, I think that you have to provide specificity, Your Honor. Well, that's what I'm asking you. Tell me what he needs to say that is more specific than he took evasive action. That when he was approximately 100 yards away, he noticed the plaintiff in the water and was going approximately 15 miles an hour, which is a reasonable speed in that area where there are hundreds of, potentially hundreds of boats on a beautiful sunny day. And in that time period, he turned his wheel to the left as hard as he could. And despite taking all of the appropriate measures and pulling back on the throttle, he was unable to avoid hitting. And he was, and by the way. And I suppose you'd also have to say, would he not that the throttle was in good working order and the rudder was in good working order? And you'd have to write about five pages of stuff, it sounds like, according to you. Why, the Twombly standard is he has to state sufficient facts to render it plausible that he indeed lacked knowledge and privity, right?  Well, as the sole owner, obviously, and operator of this boat, Your Honor. And by the way, if I may interject, and it's contained in the record, the propeller obviously was still moving when it hit my client because the record reveals that my client was struck and by the propeller. So from the record itself, there is evidence just from the record. And again, we are in a pleading position right now as opposed to a hearing on the merits. There is evidence even in the record that there was negligence on behalf of this individual. And even if he has some negligence, the limitation of liability action fails. And we get to go back to state court where, you know, pursuant to the Saving the Suitors Clause to be able to prosecute our claim. We've been in this claim now for two years and three months since the initial filing. And motion after motion after motion. And here we are the third amended attempt. And I'm two years and three months into the case. And I think that, you know, and I don't want to jump ahead and talk about the, you know, whether the motion to amend, but I'll talk about that at a later time and with your indulgence. Well, I think that's sort of what we're talking about, at least to some degree, is at which point in which complaint does the complaint become not futile but sufficient. And I'm interested when you talk about the length of time. Does this thing constitutes bad faith that you've been prejudiced because the plaintiff held back facts and dribbled them out one by one? Is that what you're arguing? No, Your Honor. I think that I'm not suggesting that we've been prejudiced. I'm not suggesting from a legal prejudice standard. What I am suggesting is, you know, under the Foman case, the Supreme Court has indicated that if there is, if the lower court believes that there's been undue delay or bad faith or billatory motive or repeated failure to cure deficiencies, that is a sufficient reason for the lower court to deny the second now attempt to amend a complaint. If I may, Your Honor, in our answer, in our answer to their complaint, which was provided way back on, that was given to them, you know, almost two years ago. In our answer, which is part of this record, we specify specifically that there were violations of, that there was a defect in this pleading. And a defect in this pleading was spelled out specifically. It said, why pursuant to F-2, we believe that there was a defect and counsel in this case had had these cases before, Your Honor. So when we talk about... So your argument is in this situation, the district court did not abuse its discretion in deeming there to be bad faith. That's correct, Your Honor. Despite, you know, what I see is some ambiguity. I mean, maybe not much. Maybe I ultimately agree with you as to the pleading standards, but some ambiguity as to what the pleading standards are. For instance, this court has not opined on them since colonial stand. Right. That's true. If I hearken back to my, my example of the, of the intoxicated driver of the boat in a bright sunny day, hitting a boat on Niagara River that is stationary and with a, an anchor. And all they have to do to file a claim is to come and say we weren't in privity. Or then, it leads to an absurdity that someone who is the sole operator of a boat can say, just come out and say, we're an attorney, not in an affidavit of themselves, but come out and say that we are not in privity or knowledge of this incident in the most absurd of circumstances. And I suggest that that's not the intent of F-2. F-2 and Tremblay are very specific. And F-2, and F-2 of the rules is very specific and dissimilar in some respects from typical, just complaints. It's a rule that says you, owner of boat, if you want to avail yourselves of the right to a limitation, which is a, which is a big deal, which is a big deal, you need to do this. And you didn't do it. And more, more, more important, maybe than that in this case, but not for the, the broad specter, more important is this, the attorney knew you should do it. And then you got a second chance to do it and you didn't do it again. And when, when we look at the fact that there's been delay and you look at who the counsel is in this case versus attorneys such as ours that have had our first case in maritime law, they, they were well aware of the cases they were involved in. They were well aware based on our answer that we believe that there was a pleading defect. They're aware, well aware that the Western districts had ruled against them on the same issue. And still, they just dragged this out. And when the court who was intimately involved in this looked at the delays in this case and they cited Supreme court rules that we are not going. So even if this third complaint is sufficient, we're not going to let you do it because there has been undue delay. So we're not, we don't believe that. Excuse me, Mr. Maranto in his reply brief, Mr. Mercanti says that the decisions that you refer to of other judges in the Western district took place after he filed his complaint. Is he inaccurate in that? Oh, your honor. I believe that to be inaccurate. I mean, look, I don't have those sites in front of me. I remember having this very conversation when the complaint was filed and it wasn't Mr. Mercanti at the time. It was an associate of his or a junior partner of his. And in addition though, your honor, again, with respect to those cases and I'd have to supplement and find that. Oh, that's okay. It'll be easy enough for us to check the dates. I hadn't done it because I read it in the reply brief and assumed that the lawyer's representation was accurate. But we, you know, we can check that easily enough. You don't need to submit anything in addition. Thank you, your honor. And I would point to the Vojkovic case, which is a case where there was multiple, there were multiple amendments and the court in the Western District, which because this court has not spoken on the issue, held some precedence or value until you, this court makes a decision specifically said that act two requires specificity. And thank you, Mr. Thank you, Mr. Meranti. Yes, we'll hear rebuttal. Yes, thank you, judges. Uh, we, we certainly were well aware as to use Mr. Meranti, those terms of, of his motion and his intent to make the motion, which is why your honors, we immediately moved simultaneously to amend the complaint. We didn't, like in many cases, we didn't await the judge's decision or the report and recommendation and then to see what the federal judge was going to do with the report recommendation, which we could have done. We immediately moved to amend the complaint. Uh, and then we immediately moved again a second time when it was before the judge. So we, we were, we, we were not delaying anything. That's for sure. In fact, our, our remand, I mean, excuse me, our removal and our limitation action was filed within, you know, obviously 30 days on the removal. And then if you look at the first report recommendation, a 78, which sets forth the procedural history on January 4th, 2019, just a couple of months after being served, we, we filed a limitation action. So there's certainly no delay on our part, judges. And this is a big deal. You know, this is a vessel on his right statutorily. And, um, you know, we have every, you know, belief that we should be able to proceed in federal court and let the court decide whether or not there was a privy knowledge of the vessel or not. Sure. I understand the chronology. So, so your client filed, um, filed, uh, the first proposed amended complaint in November of 2019. Am I right? Am I remembering the record correctly? And the second November 8th, 2019. Right. And that was, that was the, that was the complaint that added just the single allegation. Um, and then the second one was filed in January, January, January 23rd, 2020, in which we expanded greatly on that. And I think that, you know, my opposing counsel must have missed that because in his reply brief at page six, excuse me, his opposition brief, he refers to the second amended complaint that judge Cabranes was referring to, um, a 98. And, and he says on page six of his opposition, petitioner merely stated, quote, petitioner took appropriate action to avoid collision unquote, which was just another bare legal conclusion. He, he missed, uh, in the whole page two at a 98 of all those, all those allegations that we made factual. So let me, let me briefly touch on Voyevich, uh, the, the two admiralty cases that, uh, apparently relies upon Voyevich involved three errors, not just one pleading error in Voyevich. They failed to deposit with the court the value of the vessel that's, that's fatal. Uh, so Voyevich was three errors. Ryan, uh, was an unpublished decision that, um, uh, was criticized later in, in, in another Florida district court. And the main reason in the Ryan case your honors were for disallowing the complaint was, was it was filed before the owner received any claim and that back then the Florida court thought that you had to receive a claim before you could file a limitation action, which was wrong. But that was a critical error that the Ryan court found not, not anything to do with just the, uh, as to limitation. And, um, just one last point on, on rule 2A, which I find, you know, as a sidebar and just as a maritime lawyer, I find it interesting as it's the first time I noticed it myself. Rule F3  upon compliance with the requirements of F1, all claims and proceedings against the owner shall cease. So rule F3 doesn't even mention F2. It, it, it, rule F3 is saying, you know, when, when an owner complies with filing, uh, you know, uh, six months, the six months time requirement and posting security, that all claims and proceedings will cease against the owner, not even mentioning the, the pleading, uh, issues of, of F2. Um. Thank you, Mr. McConty. You, um, you're well over time. So, why don't you make a concluding remark? Okay. Thank you, Judge Livingston.  I, I just asked that the, the relief of, uh, of, I believe that it may be a de novo standard for both because of, uh, the futility issue. I believe there's law that if the district court relies on a, on a denial of an amendment for futility, that the, the review is de novo. Uh, we'd like to get this case moving. Uh, we understand the plaintiff wants his day in court and he's entitled to it. Uh, we, we'd like to get under rule one. We understand the, the reason for a just, speedy, inexpensive determination of this case. Uh, we know the opposition wants to go forward in the state court for whatever reason, which would deprive the vessel owner of a, of a important defense under maritime law. And we respectfully request your honors, uh, to vacate and remand to permit the limitation action to proceed onto the second amended complaint. And I thank you, honors, very much for your attention to this important matter. Thank you both. And we'll take the matter under advisement.